IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

HOWARD TERRY,

    Plaintiff,

v.                                                        No. 05-2283 B P

MEMPHIS HOUSING AUTHORITY,
ROBERT LIPSCOMB, in his official
Position as Executive Director,

    Defendants.

_____

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
_____

Plaintiff, Howard Terry, brought this action against the Defendants, Memphis Housing Authority ("MHA") and Robert Lipscomb, in his official capacity as Executive Director of MHA, alleging discrimination on the basis of sex and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1983. Before the Court is the motion of the Defendants, pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion of the Defendants is GRANTED.

BACKGROUND

MHA is a governmental entity organized under Tennessee law which provides low-rent housing facilities to meet the needs of the citizens of the City of Memphis. (Compl. ¶ IV.) Plaintiff is employed by MHA as a Field Commander. (Mem. Supp. Pl.'s Resp. ("Pl.'s Resp.") at 2.) In his complaint, Terry alleges that on May 23, 2002, Lipscomb sexually harassed him by subjecting him to an unwelcome sexual advance. (Compl. ¶¶ 1, 4.) Following his rejection of Lipscomb's actions, Terry maintains that he was "treated extremely differently." (Compl. ¶ 4.) Specifically, he contends that on March 18, 2003, he requested and was granted permission from Lipscomb to work overtime.

(Compl. ¶ 4.) After working thirty-four hours of overtime, Terry submitted his time sheet to Lipscomb, who refused to compensate Terry for the additional hours he worked. (Compl. ¶ 4.) Plaintiff acknowledges that his position, Field Commander, is exempt from overtime under the Fair Labor Standards Act ("FLSA"). (Compl. ¶ 2.) However, pursuant to an exception permitting some exempt managers to earn compensatory time, Plaintiff contends that he is eligible for overtime upon specific approval by Lipscomb. (Compl. ¶ 4.)

At some later point following this incident, Terry maintains that Lipscomb threatened him with loss of his position if he failed to "kick a\*\* and violate rights to stop crime at the housing unit." (Compl. ¶ 5.) He further claims that, during a meeting on September 11, 2003 regarding security issues, Lipscomb refused to let Plaintiff speak and threatened to terminate his employment. (Compl. ¶ 6; Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mot."), Ex. A) Following the meeting, Plaintiff received a written reprimand from William Webb, Assistant Director of Asset Management/Operations. (Def.'s Mot, Ex. A) The reprimand cited "inappropriate and unprofessional behavior" by Plaintiff for responding in a defensive and argumentative manner to Lipscomb's directives to resolve the security issues. (Def.'s Mot., Ex. A.)

Terry claims that "[t]hereafter," Lipscomb took actions to undermine his authority by contacting his subordinates to handle issues outside of their jurisdiction. (Compl. ¶ 7.) In September 2003, Plaintiff applied for the position of Director of Safety and Security. (Compl. ¶ 8.) Despite being qualified for the job, Plaintiff was not selected. (Compl. ¶ 8.) On March 22, 2004, after the position was re-posted, he again applied. (Compl. ¶ 8.) Neither Terry nor anyone else was hired for the position. (Compl. ¶ 8.) Plaintiff also alleges in his complaint that, at some point during his employ, he was excluded from key meetings between the Memphis Police Department and MHA. (Compl. ¶ 9.) In addition, he maintains that he was "relegated in his position to a low level

2

employee without supervisory or managerial responsibilities." (Compl. ¶ 9.)

On July 27, 2004, Terry filed a complaint with the Tennessee Human Rights Commission ("THRC") alleging discrimination on the basis of sex and retaliation. (Def.'s Mot., Ex. B.) The Equal Employment Opportunity Commission ("EEOC") issued a Dismissal and Notice of Rights on January 19, 2005 informing Terry of his right to file a lawsuit against MHA within ninety days of receipt of the notice. (Compl. Ex. A.) Plaintiff received the notice on January 23, 2005 and subsequently commenced this action on April 18, 2005 alleging discrimination on the basis of sex and retaliation. (Compl. ¶ ii.)

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit for failure to state a claim upon which relief could be granted. See FED. R. CIV. P. 12(b)(6). The Rule requires the Court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). "A complaint need not anticipate every defense and accordingly need not plead every response to a potential defense." Memphis, Tenn. Area Local, Am. Postal Workers Union v. Memphis, 361 F.3d 898, 902 (6th Cir. 2004). The Court's narrow inquiry on a motion to dismiss under Rule 12(b)(6) "is based on whether 'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." Osborne v. Bank of Am., Nat'l Ass'n, 234 F.Supp.2d 804, 807 (M.D. Tenn. 2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *overruled on other grounds*, Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must generally

confine its review to the pleadings and exhibits. If "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment " and all parties shall be given an opportunity to respond in accordance with Rule 56. FED.R.CIV.P. 12(b). However, where the attached materials are "referred to" in the plaintiff's complaint and "central to the plaintiff's claim," they may be considered as part of the pleadings for purposes of a Rule 12(b) motion. See Weirner v. Klais & Co., 108 F.3d 86, 89 (6th Cir.1997) (noting that a defendant may introduce, as part of a motion to dismiss, materials outside of the pleadings that are central to the plaintiff's claim where the plaintiff failed to do to.) Consideration of such materials does not convert the motion to dismiss into one for summary judgment. Greenberg v. Life Ins. Co. of Virginia, 177 F.3d 507, 514 (6th Cir. 1999).

Here, the Defendants have attached to their motion to dismiss (1) the written reprimand issued to Terry by William Webb on September 12, 2003; and (2) the complaint filed by Terry with the THRC on July 27, 2004. Because both documents are central to the Plaintiff's claims and are referred to in the complaint, the Court finds that these exhibits fall within the Rule 12(b) exception and may properly be considered in ruling on the Defendants' motion to dismiss.

ANALYSIS

I. Title VII Claims

The Defendants maintain that the Plaintiff's claims pursuant to Title VII based on events occurring prior to October 1, 2003 are time barred by the charge filing provisions of the Act. (Def.'s Mot. at 9.) Title VII "specifies with precision" the prerequisites that a plaintiff must satisfy before filing suit on a Title VII claim. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002) (quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). Section 2000e-5 requires that an aggrieved

individual who seeks to file a Title VII claim in federal court first present a charge with the EEOC within 180 days "after the allegedly unlawful employment practice occurred." 42 U.S.C. § 20003-5(e)(1). This time period is extended to 300 days if a discrimination charge was also filed with a state or local agency, such as the THRC, that has authority to grant relief regarding the employment practice. Id.; see also Tartt v. City of Clarksdale, No. 04-5925, 2005 WL 2210224, at *3 (6th Cir. Sept. 13, 2005) ("Tennessee is a deferral state for purposes of the federal discrimination statutes"). Because Plaintiff first filed his charge with the THRC, any discriminatory acts by the Defendants that occurred within 300 days before July 27, 2004, the day he filed his charge, are actionable.

Terry maintains however, that acts outside the 300 day time limit should be considered as part of a "continuing violation" of his rights under Title VII. (Pl.'s Resp. at 4-6.) Under the continuing violations doctrine, discriminatory incidents which occur beyond the limitations period may be brought by a plaintiff who "challenges not just one incident . . . but an unlawful practice that continues into the limitations period." Burzynski v. Cohen, 264 F.3d 611, 617-18 (6th Cir. 2001) (quoting Haithcock v. Frank, 958 F.2d 671, 677 (6th Cir. 1992)) (internal quotations and citations omitted). The Sixth Circuit has previously delineated two categories of continuing violations: (1) "where there is some evidence of present discriminatory activity" which is related to acts occurring outside the limitations period; and (2) "where there has occurred a long-standing and demonstrable policy of discrimination." Id. at 618. "A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." Dasgupta v. Univ. of Wisconsin Bd. of Regents, 121 F.3d 1138, 1139 (7th Cir. 1997).

However, in National R.R. Passenger Corp., the Supreme Court restricted the applicability of the continuing violations doctrine. National R.R. Passenger Corp., 536 U.S. at 111-13. In

5

determining whether a plaintiff timely filed a charge of discrimination, the Court held that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" Id. at 110. "[E]ven when they are related to acts alleged in timely filed charges," discrete discriminatory acts are not actionable if they occurred outside the statutory period. Id. at 113. However, "[h]ostile work environment claims are different in kind from discrete acts" because the "very nature" of a hostile work environment "involves repeated conduct." Id. at 114. In contrast to discrete acts, the unlawful employment practice comprising a hostile work environment claim "occurs over a series of days or perhaps years and . . . a single act of harassment may not be actionable on its own." Id. at 115. Accordingly, so long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. at 117.

Following National R.R. Passenger Corp., the Sixth Circuit held in Sharpe v. Cureton that "plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." Sharpe v. Cureton, 319 F.3d 259, 268 (6th Cir. 2003) (applying National R.R. Passenger Corp. to 42 U.S.C. § 1983). The court further noted that in order to establish the existence of the remaining category of continuing violations, i.e. a long-standing and demonstrable policy of discrimination, a plaintiff "must demonstrate something more than the existence of discriminatory treatment in [his] case." Id. (citing Haithcock, 958 F.2d at 679). "The preponderance of the evidence must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure." Id. (citing EEOC v. Penton Indus. Publishing Co., 851 F.2d 835, 838 (6th Cir. 1988)).

Terry contends that the conduct of the Defendants evidences a hostile work environment, not

6

based on sex, as traditionally applied, but rather, one based on continuous acts of retaliation for his rejection of Lipscomb's sexual advance. The Court finds that Plaintiff's argument is without merit. As a preliminary matter, Plaintiff does not cite to any authority to establish that such a claim is actionable in this Circuit. In Kinamore v. EPB Electric Utility, 92 Fed. Appx. 197 (6th Cir. 2004), the Sixth Circuit acknowledged a similar claim by a plaintiff where many of the alleged discriminatory acts occurred outside the statute of limitations period. Kinamore, 92 Fed. Appx. at 206. In considering the timeliness of the plaintiff's claims, the court noted that, following National R.R. Corp., only the second category of continuing violations, those involving a longstanding and demonstrable policy of discrimination, may be used to extend the limitations period for "run-of-the-mill retaliation claims." Id. Without commenting on whether Kinamore's retaliatory hostile work environment claim was such a "run-of-the-mill retaliation claim" or one for which the first continuing violations exception might apply to render acts outside the limitations period timely, the court held that because Kinamore did not show either present discriminatory activity or a longstanding policy of retaliation or discrimination, it need not address whether a continuing violation based on a retaliatory hostile work environment was cognizable. Id. Similar to Kinamore, the Court finds that it need not address the issue in this case because Plaintiff has failed to allege either exception to the customary rule that the limitations period is triggered at the time each act occurred.

In the instant case, Terry has neither claimed nor established that the second category of continuing violations would apply here. Further, in response to the instant motion, Plaintiff does not assert any *discriminatory* acts occurring after October 1, 2003, 300 days prior to the date he filed his charge. Rather, he maintains that a continuing violation exists on the basis of the following "*retaliatory* acts:" (1)"continual acts to undermine official law enforcement duties and

7

responsibilities;" (2) denial of promotional opportunities;  (3) "continual diminishing of authority and managerial position;" and (4) exclusion from "key meetings."[1]  (Pl.'s Resp. at 4-5; Compl. ¶ 9.) To establish a prima facie case of retaliation under Title VII, Terry must show (1) he was engaged in activity protected by Title VII; (2) his actions were known to the defendant; (3) subsequently, the employer took action adverse to the plaintiff or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the plaintiff's activity and the actions of the defendant.  Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir.2000). To demonstrate a causal connection, "a plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not . . . engaged in protected activity. Although no one factor is dispositive in establishing a causal connection, evidence that the defendant treated the plaintiff differently from identically situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. " Allen v. Mich. Dept. of Corr., 165 F.3d 405, 413 (6th Cir.1999) (internal citations omitted).

The Court concludes that evidence of a causal connection is lacking in the instant case. Terry argues that the alleged acts were taken by the Defendants in response to his rejection of Lipscomb's sexual advance in May 2002.  He does not assert the date on which the actions by the

---

[1] Terry also alleges that he was subject to retaliation during the limitations period through the Defendants' "continued denial of overtime pay." (Pl.'s Resp. at 5.)  According to the Complaint, Terry worked overtime and submitted his hours for payment in March 2003.  He appears to contend that, since his was never paid for the work, the violation has continued.  However, under the continuing acts doctrine, "the limitations period begins to run in response to discriminatory acts themselves, rather than in response to the continuing effects of past discriminatory acts." Cox v. City of Memphis, 230 F.3d 199, 202 (6th Cir. 2000).  Because the discriminatory act complained of in relation to his overtime occurred in March 2003, it is time-barred.

In addition, the Court will not consider Terry's allegation in response to the instant motion that the Defendants retaliated against him by "infringing upon the right to privacy and familial relationships of the Plaintiff" because there are no facts in the complaint related to this allegation. At this stage in the proceedings, Plaintiff may only amend his complaint by leave of the Court or by written consent of the Defendants, neither of which he has obtained. See FED. R. CIV. P. 15(a).

Defendant to undermine his authority and to diminish his responsibility occurred. However, to remain timely, the acts must have occurred after October 1, 2003. In the light most favorable to Plaintiff, almost one and one-half years transpired between the single incidence of harassment and the earliest alleged retaliatory act.[2] Thus, there can be no inference of a causal connection based on temporal proximity in this case. See Sanchez v. Caldera, 36 Fed.Appx. 844, 846 (6th Cir. 2002) (citing Nguyen v. City of Cleveland, 229 F.3d 559, 566-67 (6th Cir.2000) for the proposition that a proximity of time of less than six months is generally required to establish a prima facie case of retaliation); Hafford v. Seidner, 183 F.3d 506, 515 (6th Cir.1999) (no causal connection based on temporal proximity where there was more than two months between protected activity and adverse employment action); Cooper v. City of N. Olmstead, 795 F.2d 1265, 1272 (6th Cir.1986) (four month time period between the protected activity and adverse employment action was insufficient to support an inference of retaliation). Plaintiff does not allege that any employees were treated differently than him or provide any other basis from which this Court, in the absence of temporal proximity, could infer a causal connection. Accordingly, Terry has failed to establish a cognizable claim of retaliation during the limitations period on which any continuing violations theory might be based.[3] Because there is no continuing violation, Plaintiff may premise his Title VII claims against Lipscomb and MHA for discrimination and retaliation only upon those acts that occurred

---

[2] The Court notes that the Sixth Circuit has not addressed whether declining a sexual advance, in the absence of any informal or formal complaint regarding the conduct, constitutes a "protected activity" under Title VII retaliation jurisprudence. See Wagner v. Burnham, No. 1:03-CV-1522, 2006 WL 266551, *17 (N.D.N.Y. 2006) (noting that no circuit has addressed the issue and among the district courts which have, the conclusions are divergent). Because the issue is not dispositive of Plaintiff's claims, the Court will not address it herein.

[3] Even were the Court to consider Plaintiff's allegations occurring before the limitations period, the same conclusion would result. Following the alleged sexual advance by Lipscomb in May 2002, Terry does not allege a retaliatory act until the rejection of his overtime in March 2003, more than 10 months later.

9

on or after October 1, 2003, 300 days prior to the date he filed his complaint in this action. Any claims based on actions prior to that date are time barred for purposes of Title VII.

In response to the instant motion, Terry alleges violations of Title VII based on retaliation, failure to promote, and hostile work environment. The Court will address each claim in turn.

A. Retaliation

Because the Court has already concluded that Plaintiff has failed to state a valid retaliation claim based on the events alleged since October 1, 2003, Plaintiff's claims based on retaliation are hereby DISMISSED.

B. Failure to Promote

Terry next asserts that he has established a prima facie case of discrimination based on the Defendants' failure to promote him to the position of Director of Safety and Security following the re-posting of the job vacancy in March 2004. However, because the job position was not filled, there is no set of facts upon which Plaintiff would be entitled to relief on a claim of Title VII discrimination based on failure to promote. See Sutherland v. Michigan Dep't of Treasury, 344 F.3d 603, 614 (6th Cir. 2003), reh'g and suggestion for reh'g en banc denied (Nov. 25, 2003) (noting that a prima facie case of failure to promote requires demonstration that another employee with similar qualifications who was not a member of the plaintiff's protected class received the promotion.). Accordingly, Plaintiff's discrimination claims are DISMISSED.

C. Hostile Work Environment

To prevail on a claim for hostile work environment, a plaintiff must establish that "(1) [he] was a member of a protected group, (2) [he] was subjected to unwelcome harassment, (3) the harassment was based upon the employee's protected status, such as race or gender, (4) the harassment affected a term, condition, or privilege of employment, and (5) the defendant knew or

should have known about the harassing conduct but failed to take any corrective or preventive actions. Howard v. Board of Education of Memphis City Schools, 70 Fed.Appx. 272, 281 (6th Cir. 2003) (citing Williams v. Gen. Motors Corp., 187 F.3d 553, 560-61 (6th Cir.1999)); see also Lavack v.Owen's World Wide Enterprise Network, Inc., 409 F.Supp.2d 848, 854 (E.D. Mich. 2005) (applying prima facie case for Title VII hostile work environment to a same-sex sexual harassment action). Harassment is actionable under Title VII where "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . ." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotations and citations omitted).

In a same-sex sexual discrimination case, plaintiffs may satisfy the third element by using any one of three possible evidentiary routes: "(1) explicit or implicit proposals of sexual activity motivated by sexual desire, (2) harassment motivated by a general hostility toward members of one gender in the workplace, or (3) comparative evidence about how the defendant treated members of both sexes differently in a mixed-sex workplace." Lavack, 409 F.Supp.2d at 854 (citing Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80-81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). However, in all cases, the plaintiff must prove that the cited conduct "actually constituted discrimina[tion] . . . because of . . . sex.' " Oncale, 523 U.S. at 81 (internal quotations omitted).

Plaintiff does not explicitly allege that any of the complained of acts, namely the Defendants' failure to promote him in March 2004, exclusion from meetings or relegation to "a low level employee," occurred because of his gender. Rather, he maintains that they occurred as a result of his rejection of Lipscomb's advance in May 2002. (Pl.'s Resp. at 4-5.) While evidence of a proposal of sexual activity can demonstrate that workplace harassment was based upon the

11

employee's gender, in the instant case, the acts complained of do not include a sexual advance and there is no indication that the sexual proposition nearly one and one-half years prior to these actions prompted or were in any way related to them. Thus, Plaintiff has provided no basis from which the Court can infer that the acts complained of constituted discrimination because of sex. Oncale, 523 U.S. at 81. Further, taken together, Plaintiff's allegations that he was excluded from key meetings and relegated in position to a low level employee do not rise to the level of an abusive working environment permeated with discriminatory insult required to sustain a hostile work environment claim. Accordingly, to the extent Terry bases his Title VII discrimination claims on a hostile work environment, they are DISMISSED.

II. 42 U.S.C. § 1983 Claims

As with Plaintiff's Title VII claims, the Defendants assert that dismissal of the claims pursuant to § 1983 is appropriate because the claims are untimely. State law dictates the statute of limitations period for § 1983 actions, but federal law determines when the statute begins to run. Sharpe, 319 F.3d at 266. Under Tennessee law, where the Plaintiff's claims arose, a one-year statute of limitations applies to § 1983 actions. Id. (citing TENN. CODE ANN. § 28-3-104(a)(3)). Plaintiff filed the instant complaint on April 18, 2005, thus, only those acts alleged to have occurred after April 18, 2004 are actionable under § 1983.[4]

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights,

---

[4] Similar to his Title VII claims, Terry alleges that acts prior to the limitations period should be considered in analyzing his § 1983 claims on the basis of a continuing violation. Because the analysis for a continuing violation under Title VII and § 1983 are the same and because the Court has already established that Plaintiff cannot establish a continuing violation on the facts alleged in the complaint, only those acts occurring within the limitations period will be considered. Sharpe, 319 F.2d at 267 ("This Circuit employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions.").

privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F.Supp.2d 1353, 1357 (W.D. Tenn. 2001).

In response to the instant motion, Plaintiff maintains that the complaint states a claim under § 1983 for a deprivation of his constitutional rights under due process of the Fourteenth Amendment.[5] He also contends that the Defendants have violated federal and state law through the "usurpation of the office of law enforcement by failing to consult with [him as a] law enforcement officer prior to engaging subordinates in matter [sic] of interstate matters." (Pl.'s Resp at 7.) In addition, he alleges "statutory violations of obstruction of justice and tampering with a witness, informant or victim." (Pl.'s Resp. at 8.) Because § 1983 affords no protection for state rights and because Plaintiff's complaint does not allege with any specificity what, if any, specific federal statutory rights have been violated through this action, Plaintiff has failed to establish a deprivation sufficient to support a claim under § 1983 on these allegations of statutory violations. See Herron v. Caruso, No. 1:05-CV-348, 2005 WL 1862036, *6 (W.D. Mich. August 2. 2005) ("Section 1983 does not provide redress for a violation of a state law."); see also Ellison v. Cocke County, Tenn., 63 F.3d 467, 471 (6th Cir. 1995) ("not every violation of federal law gives rise to a Section 1983 claim.").

"The requirements of due process are implicated only if there has been a deprivation of an

---

[5] In response to the instant motion Terry also alleges a deprivation of his First Amendment rights based on a meeting and reprimand which occurred in September 2003. (Pl.'s Resp. at 7.) Because these actions are time barred, and not revived by the continuing violations doctrine, the Court will not address Terry's First Amendment claim. See *supra* at p.7.

13

interest 'encompassed by the Fourteenth Amendment's protection of liberty and property.'" Knoblauch v. City of Warren, 268 F.Supp.2d 775, 778 (E.D. Mich. 2003) (quoting Board of Regents of State Colls. v. Roth, 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972)). "Property interests protected by the Constitution stem from an independent source, such as state law, and are not created by the Constitution itself." Sharp v. Lindsey, 285 F.3d 479, 487 (6th Cir. 2002) (citing Roth, 408 U.S. at 577, 92 S.Ct. 2701). "Tennessee has long recognized the doctrine of employment at will, with the mutual right of either party to terminate such a relationship with or without cause." Brown v. City of Niota, 214 F.3d 718, 721 (6th Cir. 2000). "Where either side can terminate a relationship at will, neither party can have a property interest enforceable against the other in the continuance of the relationship. If nothing in the common law will prevent the [Defendants] from terminating . . . officers, neither will it prevent the [Defendants] from exercising lesser options . . ." Lisle v. Metropolitan Gov't of Nashville, Nos. 01-6049, 02-5706, 2003 WL 21580642, at *3 (6th Cir. July 9, 2003). Considering Plaintiff's timely allegations, namely his exclusion from meetings and "relegation to a low level position," the Court finds that Plaintiff has failed to establish the existence of a property interest of which he was deprived.

"Liberty interests that are protectible under the due process clause can arise either directly from the Constitution, or indirectly from the laws of the states." Prater v. City of Burnside, 289 F.3d 417, 431-32 (6th Cir.), cert. denied, 537 U.S. 1018, 123 S.Ct. 550, 154 L.Ed.2d 425 (2002) (quoting Williams v. Vidor, 17 F.3d 857, 864 (6th Cir. 1994) (Jones, J., dissenting)). In response to the motion to dismiss, Terry alleges that the Defendants' acted to diminish his supervisory or managerial responsibilities, and in so doing "impact[ed] law enforcement of federal and state regulation and statutory mandates in public housing thereby stigmatizing [him] as incompetent or ineffective by reference." (Pl.'s Resp. at 7.) The Sixth Circuit has recognized that "a person's reputation, good

name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." <u>Chilingirian v. Boris</u>, 882 F.2d 200, 205 (6th Cir. 1989). However, such a deprivation requires termination of employment, which does not appear on the facts presented to have occurred here. <u>See</u> <u>Ludwig v. Board of Tr. of Ferris State Univ.</u>, 123 F.3d 404, 410 (6th Cir. 1997). Accordingly, the Court finds that the Plaintiff has failed to establish a deprivation of a liberty interest sufficient to support a claim under § 1983.

Terry also alleges, in support of his claim of a violation of his rights under the Fourteenth Amendment, "misuse of MHA law enforcement by the executive Director for personal use both intrastate and interstate to the detriment of the plaintiff and the office for which he swore to uphold." (Pl.'s Resp. at 8.) Terry maintains that because such conduct is "patently shocking to the conscience of the Court," he has stated a claim upon which relief can be granted under § 1983. The Court cannot agree that such a vague statement, unsupported by facts in the complaint, can form the basis of a § 1983 claim. Terry defends the lack of specificity in setting forth these due process claims on the basis that they "are of a sensitive nature." (Pl.'s Resp. at 8.) However, "[i]t is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law." <u>Chapman v. City of Detroit</u>, 808 F.2d 459, 465 (6th Cir.1986) (citing <u>Place v. Shepherd</u>, 446 F.2d 1239 (6th Cir.1971); <u>Blackburn v. Fisk Univ.</u>, 443 F.2d 121 (6th Cir.1971)). Rather, to survive a motion to dismiss under Rule 12(b)(6), Plaintiff must set forth some factual basis for the claims in the pleadings. <u>Id.</u> Because Plaintiff has failed to do, his § 1983 claims based on deprivation of his rights under the Fourteenth Amendment must be dismissed.

## CONCLUSION

For the reasons set forth above, the motion of the Defendants to dismiss is GRANTED.

**IT IS SO ORDERED** this 21st day of March, 2006.

                                           s/  J. DANIEL BREEN
                                           UNITED STATES DISTRICT JUDGE